No. 16-1330

IN THE

# United States Court Of Appeals

FOR THE FOURTH CIRCUIT

_____

SUSAN H. ABELES,

*Plaintiff- Appellant,*

*v.*

METROPOLITAN WASHINGTON
AIRPORTS AUTHORITY, JULIA HODGE and VALERIE O'HARA,

*Defendants-Appellees.*

_____

On Appeal from the United States District Court
For the Eastern District of Virginia

## BRIEF FOR THE APPELLANT

Nathan Lewin, Esq.
LEWIN & LEWIN, LLP
888 17th Street, NW, 4th Floor
Washington, DC 20006
(202) 828-1000
nat@lewinlewin.com

*Attorney for Appellant*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................iv

JURISDICTIONAL STATEMENT ......................................................1

QUESTIONS PRESENTED................................................................1

STATEMENT OF THE CASE..............................................................3

    1. Ms. Abeles' Employment at MWAA ..................................5

    2. Ms. Abeles' Religious Observance .................................6

    3. Ms. Abeles Lists Her Religious Holidays.........................7

    4. Ms. Abeles Notifies Regarding the Last Days of Passover ............7

    5. Ms. Abeles' Absence for Passover Is Classified "AWOL" ............9

    6. Ignoring Her Explanation, MWAA Decides to Suspend Ms. Abeles ...........11

    7. Ms. Abeles' Suspension Is Enlarged to 5 Days.....................13

    8. Ms. Abeles Files an EEOC Complaint and Gets a Right-To-Sue Letter........18

    9. Ms. Abeles' Suit in DC Is Transferred to Virginia .................18

    10. Respondents Hodge and O'Hara Are Dismissed as Defendants..................18

    11. With Plaintiff's Consent, an Out-of-Time Answer Is Filed ..........18

    12. Judge Hilton Grants MWAA Summary Judgment .......................19

SUMMARY OF ARGUMENT .............................................................20

STANDARD OF REVIEW .................................................................24

ARGUMENT .......................................................................................25

I.     SUMMARY JUDGMENT ON THE FIRST CLAIM WAS
       ERRONEOUS BECAUSE MWAA ENGAGED IN RELIGIOUS
       DISCRIMINATION BY NOT MAKING REASONABLE
       ACCOMMODATION TO MS. ABELES' RELIGIOUS OBSERVANCE
       OF PASSOVER ........................................................................25

# TABLE OF CONTENTS

Page

II.  IN GRANTING SUMMARY JUDGMENT TO MWAA ON THE FIRST CLAIM, THE DISTRICT COURT MADE FACTUAL FINDINGS THAT WERE DISPUTED BY THE PLAINTIFF ..................................................30

  A. Ms. Abeles Disputed and Continues To Dispute Assertions of Respondents O'Hara and Hodge That She Was "Insubordinate" and That Her Performance "Deteriorated" ..................................................31

  B. Judge Hilton's Assertion That "Marking the Calendar Was No Substitute for Formal Procedure" Decided a Highly Disputed Fact ............................33

  C. Judge Hilton Found, Contrary to Ms. Abeles' Explicit Denial, That She Had Been Told That She Had To Request Permission Before Taking Annual Leave for a Religious Holiday ..................................................34

III.  RESPONDENTS HODGE AND O'HARA SHOULD NOT HAVE BEEN DISMISSED BECAUSE THEIR RELIGIOUS DISCRIMINATION WAS THE RESULT OF INDIVIDUAL NON-DELEGABLE CHOICE ..................................................35

IV.  SUMMARY JUDGMENT ON THE SECOND CLAIM WAS ERRONEOUS BECAUSE MS. ABELES' SECTION 1983 CLAIM WAS TIMELY. ..................................................37

  A. Virginia's Statute of Limitations Was Tolled During the EEOC Proceeding ..................................................37

  B. MWAA Is Liable Under Section 1983 Because It Gave Supervisors Discretion To Engage in Religious Discrimination ..................................................38

V.  THE RELIGIOUS FREEDOM RESTORATION ACT ("RFRA") APPLIES TO RELIGIOUS DISCRIMINATION BY MWAA ..................................................40

VI.  SUMMARY JUDGMENT ON THE FOURTH CLAIM WAS ERRONEOUS BECAUSE MWAA IS SUBJECT TO THE VIRGINIA RELIGIOUS FREEDOM ACT ..................................................43

# TABLE OF CONTENTS

<u>Page</u>

CONCLUSION ...................................................................................46

REQUEST FOR ORAL ARGUMENT ...................................................46

CERTIFICATE OF COMPLIANCE....................................................47

CERTIFICATE OF SERVICE ...........................................................48

# TABLE OF AUTHORITIES

Page

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)..............................................25

*Austin v. Paramount Parks, Inc.*, 195 F.3d 715 (4th Cir. 1999)..............................40

*Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th Cir. 1994)...........................35

*Carter v. Morris*, 164 F.3d 215 (4th Cir. 1999)......................................................40

*Chalmers v. Tulon Company of Richmond*,
101 F.3d 1012 (4th Cir. 1996) ...................................................................19, 20, 26

*City of Boerne v. Flores*, 521 U.S. 507 (1997) .....................................23, 40, 41, 43

*City of Canton v. Harris*, 489 U.S. 378 (1989).......................................................40

*Connick v. Thompson*, 563 U.S. 51 (2011) ..............................................................38

*Corr v. Metropolitan Washington Airports Authority*,
702 F.3d 1334 (Fed. Cir. 2012)...........................................................................42

*Delaney v. Packaging Corp. of Am.*, 673 F.3d 323 (4th Cir. 2012) ........................24

*Edmonson v. Leesville Concrete Company, Inc.*, 500 U.S. 614 (1991) ..................41

*Equal Employment Opportunity Commission v. Abercrombie & Fitch Stores, Inc.*,
135 S. Ct. 2028 (2015).........................................................................19, 21, 28

*Equal Employment Opportunity Comm'n v. Firestone Fibers & Textiles Company*,
515 F.3d 307(4th Cir. 2008) ...............................................................................27

*Equal Employment Opportunity Comm'n v. Ithaca Industries, Inc.*,
849 F.2d 116 (4th Cir. 1988) ...............................................................19, 20, 26

*Fountain v. Filson*, 336 U.S. 681 (1948) ................................................................31

# TABLE OF AUTHORITIES

Page

**CASES**

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
    546 U.S. 418 (2006)......................................................................41

*Good Shepherd Manor Foundation, Inc. v. City of Momence*,
    323 F.3d 557 (7th Cir. 2003) ......................................................27

*Greensboro Professional Fire Fighters Ass'n, Local 3157 v. City of Greensboro*,
    64 F.3d 295 (4th Cir. 1995) ........................................................39

*Herring v. F.N. Thompson, Inc.*, 866 F. Supp. 264 (W.D.N.C. 1994) ....................35

*Jacobs v. N.C. Administrative Office of the Courts*,
    780 F.3d 562 (4th Cir. 2015) ................................................24, 30

*Libertarian Party of Va. v. Judd*, 718 F.3d 308 (4th Cir. 2013).............................24

*Monell v. New York City Dep't of Social Services*, 436 U.S. 658 (1978) ..............39

*Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379 (4th Cir. 2014)...39

*Pandazides v. Virginia Board of Education*, 13 F.3d 823 (4th Cir. 1994).............27

*Parkridge 6, LLC v. United States Department of Transportation*,
    420 Fed. Appx. 265 (4th Cir. 2011)........................................24, 45

*Philips v. Pitt County Memorial Hospital*, 572 F.3d 176 (4th Cir. 2009)..............42

*Riddick v. School Board of City of Portsmouth*, 238 F.3d 518 (4th Cir. 2000).......39

*Riva v. Vowell*, 52 Va. Cir. 488 (2000)...................................................................38

*Shoemaker v. Metro Information Services*, 910 F. Supp. 259 (E.D. Va. 1996) ......35

*Speight v. Albano Cleaners, Inc.*, 21 F. Supp. 2d 560 (E.D. Va. 1998) .................35

# TABLE OF AUTHORITIES

Page

**CASES**

*Stephenson v. Pfizer, Inc.*, __ Fed. Appx. __, 2016 WL 806071
   (4th Cir. March 2, 2016) ...................................................................24

*Street v. Surdyka*, 492 F.2d 368 (1974) ................................................31

*Tolan v. Cotton*, 134 S. Ct. 1861(2014).................................................31

*Washington-Dulles Transportation, Limited v. Metropolitan Washington
   Airports Authority*, 263 F.3d 371 (4th Cir. 2001)................................44

*White v. CMA Construction Co.*, 947 F. Supp. 231 (E.D. Va. 1996)......................35

*Woodin v. Commonwealth Utilities, Inc.*, 209 Va. 72, 161 S.E.2d 669 (1968).......38

**STATUTES**

28 U.S.C. § 1291 .....................................................................................1

28 U.S.C. §1331 ......................................................................................1

28 U.S.C. §1343(4) .................................................................................1

28 U.S.C. § 1346(a)(2) ..........................................................................42

42 U.S.C. §1983 ...........................................................................*passim*

42 U.S.C. §2000bb. ................................................................................3

42 U.S.C. §§ 2000e-2(a)(1) and 2000e(j) .........................................3, 25

42 U.S.C § 12112(b)(5)(A) ...................................................................27

49 U.S.C. § 49106(a)(1).........................................................................23

Virginia Code Ann. § 57-2.02.............................................................3, 24

Virginia Code § 8.01-229(E)(1) (2006) ............................................23, 38

vi

## JURISDICTIONAL STATEMENT

This is an appeal from the District Court's final order granting summary judgment to the defendant on all four claims in a complaint growing out of the suspension-without-pay of the plaintiff for having taken annual leave on the concluding two days of Passover in 2013. Jurisdiction in the District Court was based on 28 U.S.C. §§1331, 1343(4), and 42 U.S.C. §1983. Jurisdiction of this Court rests on 28 U.S.C. § 1291.

## QUESTIONS PRESENTED

Plaintiff is an Orthodox Jew who, for 26 years of her employment with the Metropolitan Washington Airports Authority ("MWAA"), took annual leave on Jewish religious holidays without following any prescribed request-for-leave procedure after she specified the dates of all such holidays at the beginning of each calendar year. In 2013, she itemized all the Jewish holidays in January and the forthcoming Passover holidays again in March. On the Friday preceding the concluding two days of Passover (April 1 and 2, 2013), she e-mailed her supervisors that she would be away on annual leave on the following Monday and Tuesday. In response to her second-level supervisor's inquiry as to "the nature of this leave request," she replied that it was "a reminder of my schedule leave for Passover." Her supervisor replied, "Thanks." When plaintiff returned after Passover, her absence was classified as "AWOL." She again explained the nature

1

of her absence, described her prior notifications, and stated the practice she had followed for 26 years. She was then suspended without pay for 5 days. The Questions Presented are the following:

1. Whether MWAA was entitled to summary judgment on plaintiff's claim that classification of her absence for Passover observance as "AWOL" and suspension without pay for, *inter alia*, "failure to follow leave procedures" violated MWAA's obligation under Section 701(j) of the Civil Rights Act to make a reasonable accommodation to the plaintiff's religious observance.

2. Whether the District Judge made impermissible findings of fact on controverted issues in entering summary judgment for the defendant on the First Claim of the Complaint.

3. Whether MWAA's individual supervisors may be sued for religious discrimination under Title VII of the Civil Rights Act if their discriminatory conduct was not MWAA's policy but was the result of their individual decisions subsequently ratified by an MWAA vice-president.

4. Whether Virginia's two-year statute of limitations was tolled, for purpose of plaintiff's claim under 42 U.S.C. § 1983, during the Equal Employment Opportunity Commission's consideration of the administrative discrimination claim that is a mandatory pre-condition to the filing of a federal lawsuit under Title VII of the Civil Rights Act.

2

5. Whether the Metropolitan Washington Airports Authority is subject to the federal Religious Freedom Restoration Act, 42 U.S.C. § 2000bb.

6. Whether the Metropolitan Washington Airports Authority is subject to the Virginia Religious Freedom Restoration Act, Va. Code Ann. § 57-2.02.

## STATEMENT OF THE CASE

### INTRODUCTION

The Metropolitan Washington Airports Authority ("MWAA"), respondent in this appeal, failed to accommodate reasonably to an employee's religious observance contrary to the statutory obligation imposed by 42 U.S.C. §§ 2000e-2(a)(1) and 2000e(j) and thereby violated (a) the Civil Rights Act, (b) 42 U.S.C. §1983, (c) the federal Religious Freedom Restoration Act, and (d)Virginia's RFRA. After he scheduled a jury trial, the District Judge (Hilton, U.S. D.J.) granted summary judgment to MWAA, making several findings on disputed factual issues and ignoring the respondents' duty to make reasonable accommodation for plaintiff's religious observance.

MWAA supervisors (respondents Valerie O'Hara and Julia Hodge) knew that Susan Abeles was an Orthodox Jew. They were informed by her, long in advance of Passover 2013, that April 1 and 2, 2013, were days that she would take as annual leave because those days were Passover. The supervisors took advantage

3

of Ms. Abeles' religious observance to punish her and force her into early retirement.

MWAA admitted in its Answer that, at the request of respondent Hodge, Ms. Abeles listed all Jewish holidays during the calendar year 2013 on a "LiveLink" calendar at the beginning of the year. Ms. Abeles affirmed in her Affidavit that she listed the Passover holidays again, at Ms. Hodges' request, in March 2013 on her supervisors' "Outlook" calendar. JA 113, 448.[1]

MWAA's Answer admitted that Ms. Abeles' immediate supervisor (respondent Valerie O'Hara) was on annual leave on the Friday before the last two days of Passover. Ms. Abeles sent an e-mail before noon on that Friday to both Ms. Hodge and Ms. O'Hara advising them that she would be on annual leave on the following Monday and Tuesday. Ms. O'Hara, being on leave, did not respond. Ms. Hodge asked, "What is the nature of this leave request?" Ms. Abeles responded, "This is a reminder of my schedule leave for Passover." Ms. Hodge replied, "Thanks. Please see my note about providing us a status update before you leave today." JA 113-114; Plaintiff's Ex. No. 95 – JA 5, D.E. 57-1.

When she returned after the Passover holiday, Ms. Abeles discovered that her absence was classified as "AWOL." She protested with an e-mail that stated, once again, that she had been absent for a religious holiday, that she had notified

---

[1] "JA" designates the Joint Appendix in this case.

4

her supervisors several times of the dates of the religious holiday and the reason for the absence, and that this was the procedure she had followed "from day one in this office." MWAA's response – approved by its vice-president for finances and chief financial officer – was to suspend her without pay for 5 days.

Without permitting a jury to hear from live witnesses, the District Judge accepted MWAA's contention that plaintiff was disciplined for having failed to comply with MWAA's "Absence and Leave Program." JA 508, 516. In fact, the requirement that specific annual leave be requested and verbally approved by a supervisor – purportedly prescribed by MWAA's "Absence and Leave Program" – is pure fiction, never actually implemented in the real world during the 26 years that Ms. Abeles worked at MWAA.  In actual practice, as proved by plaintiff's 26-year experience, an MWAA employee who notifies her superiors long before her religious holiday that she will be on annual leave to observe the religious holiday has complied with MWAA's internal practices. The procedures invoked to justify punishing Ms. Abeles are after-the-fact excuses invoked in a court of law to whitewash the punishment of Ms. Abeles for being absent on her religious holiday and to shame her publicly so that she would have to take early retirement.

### 1. **Ms. Abeles' Employment at MWAA**

Susan Abeles was employed by MWAA since before it even existed as an independent entity. She began her service with the Airports Authority in 1987. For

26 years she served as a Commercial Specialist, Statistical Analyst, and Air Traffic Data Technician. During this entire time her job was to produce a high-profile monthly air-traffic statistics report that was on the Authority Board's meeting agenda and was provided to the highest ranking officers of MWAA. JA 430-431.

Ms. Abeles largely worked alone. Her duties did not require her to attend meetings with other employees. Her job involved gathering data from various sources and compiling it into monthly reports that were transmitted to higher level officials at MWAA and posted on the MWAA website. The air traffic statistics were also used by the media, reported in newspapers and on the radio. She consistently received successful ratings on annual performance reports. In 2013 her annual salary was $79,109. JA 303, 343, 368.

## 2.  Ms. Abeles' Religious Observance

It was well-known at MWAA that Ms. Abeles is a practicing Orthodox Jew. Ever since she began working at the agency that ultimately became MWAA she did not work on Jewish religious holidays. She also left work early on Fridays in order to be home before the Sabbath. JA 431.

From the time she began at MWAA, Ms. Abeles specified, at or about the first quarter of each calendar year, the Jewish religious holidays on which she could not, because of her religious observance, report for work. Fellow employees

and her supervisors at MWAA knew that the days that she identified in this manner were days that Ms. Abeles would be absent on annual leave. JA 431.

### 3.  Ms. Abeles Lists Her Religious Holidays

Ms. Abeles' immediate supervisor since September 2009 was Valerie O'Hara. Ms. O'Hara knew that Ms. Abeles was an Orthodox Jew who could not work on Jewish holidays. In August 2011, Julia Hodge was promoted to be Valerie O'Hara's supervisor. JA 432.

During a staff meeting in January 2013, Ms. Hodge asked the five employees of MWAA whom she was supervising to designate the days they were planning to take as leave on her department's "LiveLink" calendar.  As specifically requested of her by Ms. Hodge during the meeting, Ms. Abeles designated all the Jewish religious holidays that would be celebrated in 2013 on the department's "LiveLink" calendar. Among the dates so designated were April 1 and 2, 2013, which were the last two days of Passover. Respondent Hodge repeated this request in March 2013. Ms. Abeles reminded her supervisors again by listing the dates of the Passover holidays on the Outlook calendars of Ms. Hodge and Ms. O'Hara. JA 112-113, 448.

### 4. Ms. Abeles Notifies Regarding the Last Days of Passover

April 1 and 2, 2013, were Monday and Tuesday. On Friday, March 29, 2013, immediately preceding the specified Monday and Tuesday, respondent O'Hara was

7

out of the office on annual leave. Ms. O'Hara had not informed Ms. Abeles (her

only subordinate) that she would not be in the office. Respondent Hodge was

working at home on a flex-time schedule. At 11:59 am on Friday, March 29, 2013,

Ms. Abeles sent the following calendar e-mail to Ms. Hodge and Ms. O'Hara

(Plaintiff's Exhibit No. 94 – JA 5, D.E. 57-1):

---

**From:** Abeles, Susan
**Sent:** Friday, March 29, 2013 11:59 AM
**To:** O'Hara, Valerie; Hodge, Julia
**Subject:** SA-AL
**When:** Monday, April 01, 2013, 12:00 AM to Wednesday, April 03, 2013, 12:00 AM
**Where:**

When: Monday, April 01, 2013 12:00 AM to Wednesday, April 03, 2013 12:00 AM
(UTC-05:00) Eastern Time (US & Canada).

Note: the GMT offset above does not reflect daylight saving time adjustments.

---

Valerie O'Hara did not respond, but six minutes later Ms. Hodge sent the

following e-mail to Ms. Abeles (Plaintiff's Exhibit No. 94 – JA 5, D.E. 57-1):

---

**From:** Hodge, Julia
**Sent:** Friday, March 29, 2013 12:05 PM
**To:** Abeles, Susan; O'Hara, Valerie
**Subject:** RE: SA-AL

Susan,

What is the nature of this leave request?

Thanks,

Julia

---

Ms. Abeles responded to Julia Hodge's e-mail as follows (Plaintiff's Exhibit

No. 95 – JA 5, D.E. 57-1):

**From:** Abeles, Susan
**Sent:** Friday, March 29, 2013 12:11 PM
**To:** Hodge, Julia; O'Hara, Valerie
**Subject:** RE: SA-AL

This is a reminder of my schedule leave for Passover.

Ms. Hodge replied (Plaintiff's Exhibit No. 95 - JA 5, D.E. 57-1):

**From:** Hodge, Julia
**Sent:** Friday, March 29, 2013 12:16 PM
**To:** Abeles, Susan; O'Hara, Valerie
**Subject:** RE: SA-AL

Thanks. Please see my note about providing us a status update before you leave
today.

## 5. **Ms. Abeles' Absence for Passover Is Classified "AWOL"**

Ms. Abeles then observed the last days of the Passover holiday on April 1

and 2, 2013, and was not at work on that religious holiday. Neither Ms. O'Hara nor

Ms. Hodge called her at home to find out why she was not at work. An uncle of

Ms. Abeles died on April 2, and Ms. Abeles called Ms. O'Hara at about 6:30 am

on Wednesday, April 3, because that was the time that Ms. O'Hara was scheduled

to arrive for work. Ms. Abeles left a voice-message at about 6:40 am concerning

the death in her family and requesting annual leave for that day. When Ms. Abeles

returned to her office on Thursday, April 4, 2013, she was notified that her absence

9

on April 1 and 2 would be classified as AWOL ("Absent Without Leave"). She

replied to this news with the following e-mail (Plaintiff's Exhibit No. 102 - JA 5,

D.E. 57-1):

---

**From:** Abeles, Susan
**Sent:** Thursday, April 04, 2013 9:31 AM
**To:** O'Hara, Valerie
**Cc:** Hodge, Julia; Ramos, Juan
**Subject:** RE: SA-AL

| Tracking: | Recipient | Read |
|---|---|---|
| | O'Hara, Valerie | |
| | Hodge, Julia | Read: 4/4/2013 9:59 AM |
| | Ramos, Juan | |

Val:

You got it wrong because my Annual Leave for Monday and Tuesday, April 1st and April 2nd, which was on the MA-26 Leave Calendar, was for the last two days of Passover that Orthodox Jews observe. As you are aware, when it comes to my Jewish Holidays, the Authority has granted me religious accommodation to take leave on those holidays and I have been following the MA-26 Office protocol regarding my Jewish Holidays from day one in this office by recording all my Jewish Holidays up front for the entire year. You and Julia explicitly requested me to do just that for CY 2013 and I did. I simply sent you and Julia a meeting request to remind you both of the scheduled annual leave for this past Monday and Tuesday, so it would be on the calendar as you and Julia requested on March 21 for my Jewish Holiday scheduled leave on March 25 through March 27.

FYI, I left you a voice message at 6:40 AM, not 6:30 AM, to notify you of my Uncle's death and to take annual leave to be with my family.

Susan

---

10

### 6. <u>Ignoring Her Explanation, MWAA Decides To Suspend Ms. Abeles</u>

Not satisfied with classifying her absence as AWOL (which, we submit, was, itself, a violation of MWAA's duty under Section 701(j) of the Civil Rights Act to make reasonable accommodation for an employee's "religious observance or practice") Mss. O'Hara and Hodge, on the recommendation of HR staff member Juan Ramos, determined to suspend Ms. Abeles for having failed to come to work on her religious holiday. They drafted, for transmission to her, a 3-day suspension letter based entirely and exclusively on her alleged violation of MWAA's leave policy and being AWOL on April 1 and 2, 2013, even though they knew that she had been absent because of religious observance. The text of that letter (which the respondents acknowledge as authentic but characterize as "immaterial and irrelevant" (JA 434, 469)) is quoted below in part:

---

**From:**     Ramos, Juan
**Sent:**      Friday, April 05, 2013 10:59 AM
**To:**         Hodge, Julia
**Subject:**  Susan Abeles AWOL suspension
**Attachments:**  Susan Abeles AWOL suspension.docx

**Importance:**  High

Hi. Julia, the AWOL letter will have to be done by you. Val should not be involved in this matter, since suspensions can be done only by direct reports to the V.P. and not her. I drafted a rough draft letter for you capturing what I think the incident to be, but you were directly involved and can add, delete from my attempt in formulating this response. I attempted to make this as easy as possible. The latter part of the letter, it is template information that must be in the letter. If this letter is going to be used as progressive discipline, it should be issued after the pending disciplinary action is resolved.

---

Thanks, I hope this helps!

Juan

April, 2013

Ms. Susan Abeles
Air Traffic Data Technician, MA-26
Metropolitan Washington Airports Authority
Ronald Reagan Washington National Airport
Washington, D.C. 20001

Dear Ms. Abeles,

This is a proposal that you be suspended for three (3) days from your position of Air Traffic Data Technician, **grade, pay here**, in the name **Department here** at the Metropolitan Washington Airports Authority. The reasons for this action are as follows:

**Charge 1: Unexcused absence**

On April 1, and 2, 2013, you were scheduled to report to work at 9:00 at the Airports Authority, Washington National. You failed to report to your duty station on these days. You did not have authorization by your supervisor to be absent from duty, nor did you request leave. On March 29, you sent an e-mail to me, your second line supervisor whom was not in the office requesting approval for leave. I was on leave and not in the office on this day. Ms. Valerie O'Hara, your supervisor was also on leave on this day. I sent you an e-mail reply from my blackberry inquiring the purpose of the leave request, and I received an out of office reply from your mail box. You placed yourself on annual leave without the approval of any supervisor or me for the above days. In a meeting between your supervisor, Valerie O'Hara, Juan Ramos Labor Relations Specialist, and me on February 20, 2013, you were placed on notice that you needed to follow the Authority's Absence and Leave Program HR-002 for leave. On March 25, 25, and 27, 2013 you requested leave for a religious observance, where you properly requested leave, with this leave being approved by your supervisor. You did not properly request leave on April 1, and 2, 2013 when you were absent from work. Your failure to be present at work without authorization from your supervisor on the above days forms the basis of this charge.

**Charge 2: Failure to follow leave procedures.**

On March 29, 2013, you failed to follow proper leave procedures for requesting annual leave, when you submitted an e-mail to me, your second line supervisor to approve leave. The Absence and Leave directive states in part, "except in emergencies, use of annual leave will be requested and approved in advance by completion of a Leave Application form (PE-26) or by an exchange of emails between the employee and the supervisor." Your immediate supervisor is Ms. Valerie O'Hara. In emergency situations, employees must notify their leave approving official of the need for leave before or as soon as possible. Your request for leave was not of an emergency nature and was a planned event which required advance approval in order to plan for department deadlines. You failed to notify your supervisor or anyone in the chain of command of your planned leave which has resulted in work deadlines being missed by you. In a statement provided by you to your supervisor on April 4, 2013, you indicated you had not requested leave, but assumed it had been approved because you annotated on a department calendar. The Absence and Leave policy is clear that all employees must request and get approval by their supervisor prior to taking leave. You did not request leave, nor have approval for any leave on April 1, and 2, 2013. Your failure to follow the proper procedures for requesting leave forms the basis of this charge.

## 7. Ms. Abeles' Suspension Is Enlarged to 5 Days

Thereafter, Ms. Abeles' supervisors and HR staff expanded the suspension period to 5 days and included, in the suspension letter, allegations that she had been guilty of insubordination.[2] The relevant portions of the suspension letter sent to Ms. Abeles by Ms. Hodge on April 12, 2013, are as follows (JA 364-366):

---

[2] As demonstrated in her attorney's letter (Plaintiff Exhibit 166) – rejected by MWAA because a request for a one-day extension was submitted several minutes late – Ms. Abeles was not insubordinate.

13

April 12, 2013

Ms. Susan Abeles
8811 Colesville Road
Silver Spring, MD 20910

Dear Ms. Abeles:

This is notice that I propose to suspend you for five (5) business days from your position of Air Traffic Data Technician, R-18, $79,109 per annum in the Internal Controls, Compliance & Financial Strategy Department, Metropolitan Washington Airports Authority. This proposed suspension is based on the following charges:

- Insubordination
- Failure to follow leave procedures
- Absent without leave

*   *   *   *   *   *   *

**Charge 2: Failure to Follow Leave Procedures**

On March 25, 26, and 27, 2013, you requested and were granted leave for a religious observance. This leave was properly requested and approved by your supervisor. On April 1 and 2, 2013, you were scheduled to work, but failed to report. You did not have authorization by your supervisor or me to be absent from duty. On Friday, March 29, you sent a calendar notification to me, and your supervisor, reminding us of your intention to take leave on April 1 and 2. On that day, I and your supervisor were both on leave. I sent you an e-mail reply from home, inquiring as to the purpose of the leave request and I received an "Out of Office" automatic reply from your mailbox, as well as a follow up note from you stating that the calendar notation was "a reminder of your scheduled leave for Passover."

Section 2.8 (a) of the Absence and Leave Directive, HR-002 states:

Except in emergencies, use of annual leave will be requested and approved in advance by completion of a Leave Application form (PE-26) or by an exchange of emails between the employee and the supervisor. In emergency situations, employees must notify their leave

14

approving official of the need for leave before or as soon as possible (normally within 1 hour) after they are schedule to report for duty. At the time of the request, the employee will be advised whether or not the leave is approved.

You placed yourself on annual leave without the approval of any supervisor. In a meeting between your supervisor, Valerie O'Hara, Juan Ramos, Labor Relations Specialist, and me on February 20, 2013, you were placed on notice that you needed to follow the procedure stated above. Your failure to notify your supervisor or anyone in the chain of command of your planned leave resulted in deadlines being missed by you. In a statement that you provided to your supervisor on April 4, 2013, you conceded that you had not requested leave, but assumed it had been approved because you noted it on a department calendar.

Section 2.2.e of the Conduct and Discipline Directive (HR-003) requires Authority employees to make timely requests for approval of absences from duty. You failed to follow the procedures for requesting leave under Section 2.8(a) of the Absence and Leave Directive and you failed to follow the requirement of making a timely request for leave under the Conduct and Discipline Directive.

**Charge 3: Absent without Leave**

Section 5.1(b) of the Absence and Leave Directive states:

<u>Absence Without Leave (AWOL):</u> The employee is placed in a temporary non-pay status by the leave-approving official based on the determination that no type of leave is approved (annual, sick, or leave without pay) for an absence for which the employee did not request leave, or for which leave was requested but denied.

Your absence from work on April 1 and 2, 2013 because of your failure to follow the procedure described in Section 2.8(a) of the Absence and Leave Directive constitutes Absence Without Leave (AWOL) under Section 5.1(b) of this Directive.

Section 2.3(a)(17) of the Conduct and Discipline Directive (HR-003) prohibits Authority employees from "Being absent from one's duties without approved leave." Your AWOL conduct constitutes a violation of Section 2.3(a)(17) of the Conduct and Discipline Directive.

**Proposed Discipline**

Based on the foregoing, I propose to suspend you for five (5) business days. You may reply to this proposal in person, in writing, or both, to me within seven (7) calendar days from the date you receive this letter. You may use a reasonable amount of official time for this purpose and obtain a representative at your own expense to assist you in responding. You are assured that your reply will be given full consideration. If I determine that the suspension is sustained, you will be informed and your reply will be filed in your Official Personnel Folder with this suspension. If I decide this suspension should be rescinded, you will be informed and this letter and the documents related to this particular matter will not be filed in your personnel folder. If you do not reply within (7) calendar days from the date of your receipt of the proposal, a decision will be made concerning the proposal with any action taken placed in your Official Personnel Folder without further consideration. The suspension may be imposed no earlier than seven calendar days from the date of the proposal.

Upon your request, Janice Borneman-Eckels Labor Relations Specialist, is available if you have any questions regarding this proposal. She may be reached at 703-417-8349.

s/ Julia Hodge
Julia Hodge
Manager, Internal Controls, Compliance &
Financial Strategy

Employee's Signature: s/Susan Abeles          Date: 4/12/13

Before 2012 Ms. Abeles had received "successful ratings" on her

performance, had often been rated as "'far exceeding' expectations," and had been

given "I Made a Difference" awards for her performance. JA 431, 465.

Respondents O'Hara and Hodge harassed Ms. Abeles over inconsequential

16

subjects such as whether she arrived at work at precisely 9 am or arrived at the office at 9:15 am. JA 432.[3] Ms. Abeles alleged in her "Statement of Undisputed Material Facts" that "[b]eginning in late 2012, Ms. O'Hara and Ms. Hodge began making unjustified criticisms" of her performance. JA 432. MWAA's response disputed this allegation which was, contrary to MWAA's assertion, supported by the record. JA 467.

The 2013 hostility to Ms. Abeles shown by Mss. Hodge and O'Hara and by the HR staff of MWAA, including Juan Ramos and Robin Wade, was endorsed by MWAA's top management when Andrew Rountree, MWAA's Vice President of Finance and Chief Financial Officer, approved their religious discrimination by signing his consent to the 5-day suspension. This hostile environment, which disparaged her religious observance by treating the observance of Passover as AWOL and penalized Ms. Abeles severely for observing Passover, left Ms. Abeles no choice other than to take early retirement. She stated in her Affidavit that she had planned to continue at her MWAA job "as long as I was physically able to do so" and observed that one MWAA employee "continued to work there into her eighties." JA 451.

---

[3] Ms. Abeles had no meetings during the day with other employees apart from meetings that Ms. O'Hara scheduled for precisely 9 a.m., when Ms. Abeles was scheduled to arrive for work. Ms. Abeles worked alone in her office, occasionally arriving within 15 minutes after her scheduled starting time. Although such minimal tardiness did not affect the efficiency of MWAA's operations, respondents O'Hara and Hodge and HR staff-member Ramos berated her for it.

### 8. Ms. Abeles Files an EEOC Complaint and Gets a Right-To-Sue Letter

On September 17, 2013, Ms. Abeles filed a complaint with the Equal

Employment Opportunity Commission alleging religious discrimination. She

received a right-to-sue letter on February 7, 2015. JA 11, 114.

### 9. Ms. Abeles' Suit in DC Is Transferred to Virginia

The Complaint in this case was filed in the United States District Court for

the District of Columbia because the mailing address of MWAA is "Washington,

D.C." MWAA moved to dismiss or transfer the case to the Eastern District of

Virginia (JA 15-16). On reviewing existing case-law, Ms. Abeles' counsel

consented to the transfer (JA 76-77). The case was assigned to United States

District Judge Claude M. Hilton.

### 10. Respondents Hodge and O'Hara Are Dismissed as Defendants

The respondents moved in the Eastern District of Virginia to dismiss the

Complaint (JA 78, 81). Judge Hilton denied the dismissal motion with respect to

MWAA, but ordered that Hodge and O'Hara be dismissed as defendants because

"individual supervisors may not be sued personally when they are carrying out

personnel decisions of a plainly delegable character." JA 107.

### 11. With Plaintiff's Consent, an Out-of-Time Answer Is Filed

Plaintiff consented to MWAA's motion to file an out-of-time answer to the

complaint. MWAA's Answer was filed on December 17, 2015. JA 109-118.

18

## 12. Judge Hilton Grants MWAA Summary Judgment

Discovery included the depositions of the plaintiff, her sister, Mss. Hodge and O'Hara, and HR personnel of MWAA, as well as the filing of witness and exhibit lists. A "final pretrial conference" was held on February 18, 2016, and a jury trial was set for March 30, 2016. JA 4.

On February 26, 2016, MWAA filed a motion for summary judgment. JA 119-416. Plaintiff's response to the motion, her response to the respondents' Statement of Undisputed Material Facts, her Statement of Undisputed Material Facts, and Ms. Abeles' Affidavit were filed on March 8, 2016. JA 417-457. Ms. Abeles' response asserted that "a plaintiff who alleges a failure to accommodate to religious observance need not allege or prove religious animus." JA 436. Respondents replied on March 10, 2016 (JA 458-503), and argued that the Supreme Court's decision in *Equal Employment Opportunity Commission v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028 (2015), held that "there is no separate cause of action for failure to make a religious accommodation under Title VII." JA 471-472. Respondents acknowledged that such a holding would mean that this Court's ruling in *Chalmers v. Tulon Company of Richmond*, 101 F.3d 1012 (4th Cir. 1996), which had reaffirmed the *en banc* holding in *Equal Employment Opportunity Comm'n v. Ithaca Industries, Inc.*, 849 F.2d 116, 118-119 (4th Cir. 1988), was effectively overruled and no longer "held sway." JA 472.

19

Without hearing oral argument, Judge Hilton filed an order on March 14, 2016, granting MWAA's motion for summary judgment on all four claims and striking the case from the trial docket. JA 504. Ms. Abeles filed a Notice of Appeal on March 25, 2016. JA 505-506. On April 1, 2016, Judge Hilton filed a Memorandum Opinion. JA 507-520. The opinion did not discuss Ms. Abeles' claim that MWAA engaged in religious discrimination by failing to reasonably accommodate her religious observance. It denied relief under Title VII of the Civil Rights Act because, in the District Judge's view, the plaintiff "cannot demonstrate satisfactory job performance or that she was treated differently from similarly situated employees outside the protected class." JA 514.

## SUMMARY OF ARGUMENT

1. By treating Ms. Abeles' absence on the Passover holiday as "AWOL" and disciplining her with a 5-day suspension based largely on her "unexcused absence" and her "failure to follow leave procedures" even though she had provided ample advance notice of her absence and the absence imposed no hardship whatever on MWAA, the respondents failed to make a reasonable accommodation to her religious observance in violation of Sections 703(a)(1) and 701(j) of the Civil Rights Act of 1964, as amended. This Court's decisions in *Chalmers v. Tulon Company of Richmond*, 101 F.3d 1012, 1017-1020 (4th Cir. 1996), and *Equal Employment Opportunity Comm'n v. Ithaca Industries, Inc.*, 849 F.2d 116, 118-

20

119 (4th Cir. 1988) (en banc), establish that an employer's failure to make a reasonable accommodation violates Title VII regardless of the employer's state of mind. Ms. Abeles' protected right to observe her religion does not depend on proving anti-Semitism or religious bias on the part of MWAA. The Supreme Court's recent decision in *Equal Employment Opportunity Comm'n v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028 (2015), granted ***greater*** protection than the employer asserted under Title VII to religiously observant employees making "disparate treatment" claims. The Supreme Court surely did not overrule decisions of this Court and other Circuits that recognized the obligation of employers who have no religious animus to make reasonable accommodations for their employees' religious observance. His decision must be reversed because the District Judge totally failed to consider the application of Section 701(j) of the Civil Rights Act to the facts of this case.

2.  Even if the "disparate treatment" standard were applicable to this case, the District Judge's order granting summary judgment to MWAA was erroneous because the District Judge's ruling rested on his impermissible resolution of sharply contested factual issues.

(a) Contrary to the assertions made in the District Judge's opinion, Ms. Abeles denied that she had been "insubordinate" or that her performance "deteriorated" in 2012.

21

(b) The 26 years of her experience in observing religious holidays while employed at MWAA established that, contrary to the District Judge's findings, "marking the calendar" at the beginning of each calendar year with the Jewish holidays was an accepted "substitute for formal procedure."

(c) Ms. Abeles squarely denied that she had been told by her superiors – as Judge Hilton found in his opinion – that she could "use leave" ***only*** "in accordance with the Airports Authority's Absence and Leave Program."

These findings by the District Judge were essential bases for his conclusion that Title VII had not been violated by MWAA. It is well-established, however, that such contested factual issues are not to be resolved at the summary judgment stage. They must be left for determination by a jury at trial.

3. Respondents Hodge and O'Hara are proper Title VII defendants in this case (as is Juan Ramos) because they were not implementing "personnel decisions of a plainly delegable character" when they treated Ms. Abeles' observance of Passover as "AWOL" and imposed a suspension on her for being absent for religious observance after she had provided advance notice of her absence and received advance e-mailed approval from a second-level superior. The individual respondents made discretionary discriminatory personal decisions that violated the Civil Rights Act. Their individual liability is comparable to the individual liability

22

of superiors who, without approval of the employers for whom they work, engage in sexual harassment.

4.   The District Judge erred in dismissing Ms. Abeles' Section 1983 claim on statute-of-limitations grounds. Since Ms. Abeles could not legally initiate a Title VII religious discrimination claim without first proceeding before the Equal Employment Opportunity Commission and receiving a "right-to-sue" letter, the period during which the EEOC proceeding was pending was tolled under Virginia Code § 8.01-229(E)(1), which is the general tolling provision of Virginia law. MWAA is liable under Section 1983 because it permitted superiors like Mss. Hodge and O'Hara and Juan Ramos to engage in prohibited religious discrimination and, with the approval of a vice-president, penalize an employee for engaging in religious observance.

5.   The conduct of MWAA and its employees was "under color of law" within the meaning of the Religious Freedom Restoration Act as it was amended after the Supreme Court's decision in *City of Boerne v. Flores*, 521 U.S. 507 (1997).  The MWAA is a quasi-governmental body, defined in 49 U.S.C. § 49106(a)(1) as "a public body corporate and politic." A federal statute (Pub. L. 99-500) assigned it authority over the two airports in the Washington, D.C., area. Contrary to the ruling of the District Court, the MWAA is subject to the prohibition against the

23

imposition of substantial burdens on religious exercise prescribed in the Religious

Freedom Restoration Act.

6.  MWAA was created under Virginia law. Its directors are appointed by

elected government officials, it serves substantially governmental functions, and it

owes its existence to an inter-governmental interstate compact. This Court

described MWAA in its decision in *Parkridge 6, LLC v. United States Department

of Transportation*, 420 Fed. Appx. 265, 268 (4th Cir. 2011), as "a political

subdivision constituted to operate and improve the Metropolitan airports."

Contrary to the holding of the District Judge, MWAA is subject to the Virginia

Religious Freedom Act, Va. Code Ann. § 57-2.02.

## STANDARD OF REVIEW

A district court's award of summary judgment is reviewed by this Court *de

novo*. *Stephenson v. Pfizer, Inc.*, __ Fed. Appx. __, 2016 WL 806071 (4th Cir.

March 2, 2016).

This Court observed in *Jacobs v. N.C. Administrative Office of the Courts*, 780

F.3d 562, 568 (4th Cir. 2015): "A district court 'shall grant summary judgment if

the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(a). 'A

dispute is genuine if "a reasonable jury could return a verdict for the nonmoving

party."' *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)

(quoting *Delaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)).

'A fact is material if it "might affect the outcome of the suit under the governing

law."' *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct.

2505, 91 L. Ed.2d 202 (1986))."

The Supreme Court said in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255,

that "[t]he evidence of the non-movant is to be believed, and all justifiable

inferences are to be drawn in his favor."

## ARGUMENT

## I.

### SUMMARY JUDGMENT ON THE FIRST CLAIM WAS ERRONEOUS BECAUSE MWAA ENGAGED IN RELIGIOUS DISCRIMINATION BY NOT MAKING REASONABLE ACCOMMODATION TO MS. ABELES' RELIGIOUS OBSERVANCE OF PASSOVER

Section 703(a)(1) of the Civil Rights Act of 1964 makes it an unlawful

employment practice for an employer to discriminate against an employee on the

basis of his or her religion. A 1972 amendment to the Civil Rights Act – Section

701(j), 42 U.S.C. § 2000e(j) – defined "religion" to include "all aspects of religious

observance and practice." An employer such as MWAA must, under the Civil

Rights Act as amended in 1972, "reasonably accommodate to an employee's or

prospective employee's religious observance or practice" unless the employer can

25

demonstrate that he is unable to make such an accommodation "without undue hardship on the conduct of the employer's business."

This Court has recognized that religious accommodation claims differ from claims of religious discrimination based on "disparate treatment." Whereas an employer's bias or animus may be an element of a "disparate treatment" case, it is not relevant in determining whether an employer has made the statutorily required reasonable accommodation for religious observance. See *Chalmers v. Tulon Company of Richmond*, 101 F.3d 1012, 1017-1020 (4th Cir. 1996); *Equal Employment Opportunity Comm'n v. Ithaca Industries, Inc.*, 849 F.2d 116, 118-119 (4th Cir. 1988) (en banc).

In *Chalmers* this Court said (101 F.3d at 1017, citation omitted): "Courts have recognized that employees may utilize two theories in asserting religious discrimination claims. These theories are denominated as the 'disparate treatment' and 'failure to accommodate' theories." The Court's opinion then described the "failure to accommodate" theory as follows (101 F.3d at 1018): "In a religious accommodation case, an employee can establish a claim even though she cannot show that other (unprotected) employees were treated more favorably or cannot rebut an employer's legitimate non-discriminatory reason for her discharge. This is because an employer must, to an extent, actively attempt to accommodate an employee's religious expression or conduct even if, absent the religious

26

motivation, the employee's conduct would supply a legitimate ground for discharge."

This Court has analogized claims that an employer failed to make reasonable accommodation for an employee's religious observance to the parallel "reasonable accommodation" requirement in the Americans with Disabilities Act. See 42 U.S.C § 12112(b)(5)(A); *Equal Employment Opportunity Comm'n v. Firestone Fibers & Textiles Company*, 515 F.3d 307, 314 (4th Cir. 2008); cf. *Pandazides v. Virginia Board of Education*, 13 F.3d 823 (4th Cir. 1994).

The Seventh Circuit explained in *Good Shepherd Manor Foundation, Inc. v. City of Momence*, 323 F.3d 557, 562 (7th Cir. 2003), why an employer's subjective bias or animus – his "intentional discrimination" – is not relevant in a failure-to-accommodate case: "'Failure to reasonably accommodate' is an alternative theory of liability. The theory would be entirely redundant if it required proof that the defendants' actions were motivated by animus towards the handicapped. Indeed for the reasonable accommodation theory to be meaningful, it must be a theory of liability for cases where we assume there is a valid reason behind the actions of the city, but the city is liable nonetheless if it failed to reasonably accommodate the handicap of the plaintiff."

Contrary to the argument made by MWAA in the District Court (JA 470-473), this legal proposition – upholding a Title VII claim for failure to make

27

reasonable accommodation for an employee's religious observance even if there is no other evidence of the employer's religious animus or bias – was not overruled or diminished by the Supreme Court's decision in *Equal Employment Opportunity Comm'n v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028 (2015). The *Abercrombie & Fitch* case was argued and decided as a "disparate treatment" case, not as a failure-to-make-reasonable-accommodation case. 135 S. Ct. at 2031-2032. The Supreme Court held in *Abercrombie & Fitch* that in disparate-treatment cases Title VII "does not impose a knowledge requirement." 135 S. Ct. at 2032.  It did not reduce an employer's statutory duty to make a reasonable accommodation to an employee's religious observance or entitle an employer to deny a reasonable accommodation where there is no "undue hardship" for a reason not based on religious animus.

To prevail under Title VII Ms. Abeles need not prove that MWAA was motivated by anti-Semitism, or even that her superiors had any animus against Jews or against individuals whose religion required them to abstain from weekday labor on Jewish religious holidays. The relevant question in determining whether Ms. Abeles was the victim of religious discrimination, as defined in Section 701(j) of  the Civil Rights Act, is whether her superiors and MWAA made a "reasonable accommodation" to her religious observance when they designated her absence on the concluding days of Passover as "AWOL" and proceeded to suspend her

without pay for allegedly violating MWAA's leave policy after she repeated what her superiors knew from her earlier notifications – *i.e.*, that her absence on April 1 and 2 was attributable to her religious observance of Passover.

MWAA has never claimed that it suffered any "hardship" whatever – much less "undue hardship" – because Ms. Abeles was not at work on April 1 and 2, 2013. She largely worked alone in drafting reports and summaries that were provided to top-level personnel at MWAA. She had been providing reports that won her praise during her 26 years at MWAA, and her absence for two days caused absolutely no "hardship" whatever to MWAA.

The undisputed facts establish that (1) Ms. Abeles is an Orthodox Jew and her religious observance was well-known to her superiors and throughout the MWAA office, (2) Passover is a recognized Jewish holiday and the first two and last two days of the holiday are compulsory days of rest when Orthodox Jews cannot perform weekday work and are, therefore, absent from their jobs, (3) Ms. Abeles notified her superiors in January and again in March that she intended to take annual leave on these days, (4) Ms. Abeles sent a "reminder" to her superiors on the last work-day before the April 1 and 2 Passover holiday and, in reply to Ms. Hodge's inquiry regarding "this leave request," she noted that she would be away "for Passover," (5) Ms. Hodge replied affirmatively to the e-mail with "Thanks," (6) on returning from her religious observance, Ms. Abeles again explained her

absence in an e-mail that stated that her absence "was for the last two days of Passover that Orthodox Jews observe," and (7) Ms. Abeles explained the religious grounds for her absence again in a meeting she had with Ms. O'Hara and Mr. Ramos.

A jury can surely find, on these facts and on the prospective trial testimony of Ms. Abeles, the cross-examination of her superiors and Juan Ramos, and the exhibits that were listed as potential trial exhibits that classifying her absence as "AWOL" and penalizing her with a five-day suspension was not the "reasonable accommodation" to religious observance that Section 701(j) prescribes.

The District Judge's Memorandum Opinion neither discussed nor even mentioned the employer's obligation to make a reasonable accommodation for religious observance although this theory of liability was explicitly argued in Plaintiff's Response to Motion for Summary Judgment. JA 436-438. It was error to prevent consideration by a jury of the reasonableness of MWAA's treatment of Ms. Abeles' absence for religious observance.

## II.

### IN GRANTING SUMMARY JUDGMENT TO MWAA ON THE FIRST CLAIM, THE DISTRICT COURT MADE FACTUAL FINDINGS THAT WERE DISPUTED BY THE PLAINTIFF

In *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015), this Court reversed a summary judgment order because "[t]he

30

district court's opinion . . . states the facts in the light most favorable to the [movant] – not . . . the nonmovant" and "[t]he district court . . . improperly resolved factual issues at the summary judgment stage, in contravention of well-settled law." The final judgment on appeal in this case suffers from the identical flaws.

Summary judgment entered by a District Court that has made material findings on disputed issues of fact must be reversed. See, *e.g.*, *Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014); *Fountain v. Filson*, 336 U.S. 681, 683 (1948); *Street v. Surdyka*, 492 F.2d 368, 374 (1974). We specify below a number of material factual issues that Judge Hilton improperly resolved in his summary judgment ruling.

## A. Ms. Abeles Disputed and Continues To Dispute Assertions of Respondents O'Hara and Hodge That She Was "Insubordinate" and That Her Performance "Deteriorated."

Judge Hilton repeatedly asserts in his Memorandum Opinion that Ms. Abeles was "insubordinate," that her performance "deteriorated" in 2012-2013, and that she "failed to meet her supervisor's expectations and instructions earlier in the year." JA 508, 513, 514, 515. The Memorandum Opinion states, "The undisputed charge of insubordination merited a five day suspension penalty on its own, regardless of the allegedly discriminatory AWOL classification." JA 513.

31

Judge Hilton's conclusion that Ms. Abeles' alleged "insubordination" warranted a 5-day suspension conflicts with the fact (see pp. 11-13, *supra*) that the respondents initially would only have "reprimanded" Ms. Abeles on their allegation that she was "insubordinate." Respondent Hodge acknowledged in her deposition that if not for her absence to observe Passover, Ms. Abeles' alleged "insubordination" would only have resulted in a "reprimand," not a suspension. JA 333-334. After Ms. Abeles' Passover absence the respondents determined to convert the "reprimand" into a 3-day suspension for "unexcused absence" and "failure to follow leave procedure" – based entirely on Ms. Abeles' absence for religious observance. See pp. 12-13, *supra*. The alleged "insubordination" was the respondents' justification for adding 2 days to the suspension they were planning to impose for "unexcused absence" and "failure to follow leave procedure." It was plainly not grounds, in and of itself, for a 5-day suspension, as Judge Hilton erroneously asserts in his Memorandum Opinion.

The District Judge also declares in his Memorandum Opinion that Ms. Abeles "does not dispute" the allegations of insubordination in the suspension letter. In her deposition, Ms. Abeles ***did*** dispute the allegations that her performance had "deteriorated." JA 292-294.  She also disputed paragraph 17 of MWAA's "Statement of Undisputed Material Facts" in which the respondents alleged that her performance had "deteriorated."  JA 127, 427.

32

MWAA admitted (JA 209, ¶ 39) that it received – albeit one day late – a letter from Ms. Abeles counsel, in which the insubordination allegation made in the suspension letter was disputed.[4] Ms. Abeles testified in her deposition that her attorney prepared and submitted a letter responding to the insubordination allegations in the suspension letter. JA 298. Consequently, Judge Hilton's finding that the "insubordination" allegations in the suspension letter were "undisputed" was plainly incorrect.

**B. Judge Hilton's Assertion That "Marking the Calendar Was No Substitute for Formal Procedure" Decided a Highly Disputed Fact.**

Judge Hilton's Memorandum Opinion rested on the resolution of another disputed issue of fact. Ms. Abeles declared in her Affidavit (JA 448), in her written e-mail of April 4, 2013 (p. 10, *supra*) , in her Statement of Undisputed Facts (JA 431-432), and during her deposition (JA 283-285) that she had, for the previous 26 years of her employment at MWAA, taken annual leave on Jewish holidays after listing the dates of the holidays at the beginning of the calendar year without expressly requesting permission to do so from her supervisor for each holiday. Apparently disbelieving her assertion and improperly resolving an issue of fact, Judge Hilton granted summary judgment to MWAA because he found that "[m]arking the calendar was no substitute for formal procedure" and that "[a]nnual

---

[4] A copy of counsel's letter is Plaintiff's Ex. No. 166 – JA5, D.E. 57-1; Exh. Q to Plaintiff's Response to Defendants' Request for Production of Documents.

leave still had to be requested pursuant to the Absence and Leave Program." JA 508. The judge described the suspension imposed on Ms. Abeles as having been administered "for failing to follow the procedure in April 2013 (among other uncontested reasons)." JA 513. The suspension was, in fact, imposed for reasons that Ms. Abeles has "contested" vigorously throughout this litigation.

### C. Judge Hilton Found, Contrary to Ms. Abeles' Explicit Denial, That She Had Been Told That She Had To Request Permission Before Taking Annual Leave for a Religious Holiday.

In his Memorandum Opinion Judge Hilton declares that Ms. Abeles "was advised in early 2013, . . . to use leave in accordance with the Airports Authority's Absence and Leave Program." JA 509. MWAA listed this allegation as paragraphs 18 and 19 of MWAA's "Statement of Undisputed Material Facts." JA 127. Ms. Abeles' response to the Motion for Summary Judgment explicitly denied these allegations. JA 428. Ms. Abeles also denied this allegation during her deposition. JA 272, 286-287. The District Judge lacked authority to decide this contested factual issue on a motion for summary judgment.

**III.**

**RESPONDENTS HODGE AND O'HARA SHOULD
NOT HAVE BEEN DISMISSED BECAUSE THEIR
RELIGIOUS DISCRIMINATION WAS THE RESULT OF
INDIVIDUAL NON-DELEGABLE CHOICE**

The District Judge erred in dismissing respondents Hodge and O'Hara as defendants on the ground that their discipline of Ms. Abeles was a "personnel decision of a plainly delegable character" within this Court's decision in *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 n. 1 (4th Cir. 1994). District Courts in this Circuit have permitted individual supervisors to be named as defendants when a plaintiff's claim of unlawful employer conduct addresses a supervisor's personal improper conduct, not implementation of the employer's delegable policy in "hiring, firing, and promotion." *White v. CMA Construction Co.*, 947 F. Supp. 231, 235 (E.D. Va. 1996); *Speight v. Albano Cleaners, Inc.*, 21 F. Supp. 2d 560, 564-565 (E.D. Va. 1998); *Shoemaker v. Metro Information Services*, 910 F. Supp. 259 (E.D. Va. 1996); *Herring v. F.N. Thompson, Inc.*, 866 F. Supp. 264, 266 (W.D.N.C. 1994).

Ms. Abeles is ***not*** claiming that MWAA had a delegable policy of refusing to permit employees to take annual leave on religious holidays. If MWAA had, in fact, announced such a policy and supervisors had, on this account, refused to permit the observance of religious holidays, this Court's *Birkbeck* decision would have governed the status of respondents Hodge and O'Hara. Neither of them (nor

Juan Ramos, who the plaintiff intends to seek to add as an individual defendant) would have been named in the Complaint.

Ms. Abeles' Complaint alleges the contrary. Paragraph 12 alleges that ever since she began working for MWAA, Ms. Abeles had been allowed to observe her religious holidays. In 2013 – initiated and executed by her immediate supervisors respondents Hodge and O'Hara and encouraged by Juan Ramos – Ms. Abeles was penalized for observing the last two days of Passover.

This act of religious discrimination – violative of both federal and Virginia law – was not a decision "of a plainly delegable character" so that supervisors to whom the task was "delegated" could claim exemption from liability. It was conduct attributable to nondelegable judgments by supervisory employees.

We have cited on page 35, *supra*, a number of cases in which individual supervisors were held accountable for sexual harassment in civil lawsuits by employee victims. The conduct of respondents Hodge and O'Hara on the facts of this case, as well as the conduct of Juan Ramos who we will seek to join if this case is remanded, is comparable in the individual culpability of the employees to the cited sexual harassment cases.

# IV.

## SUMMARY JUDGMENT ON THE SECOND CLAIM WAS ERRONEOUS BECAUSE MS. ABELES' SECTION 1983 CLAIM WAS TIMELY

### A. <u>Virginia's Statute of Limitations Was Tolled During the EEOC Proceeding.</u>

The District Judge accepted MWAA's claim that Ms. Abeles' Section 1983 claim was "barred by limitations" (JA 141-142) because Virginia's two-year statute of limitations applies to a Section 1983 claim, and  the Section 1983 claim was asserted in this action more than two years after the discriminatory conduct alleged by Ms. Abeles. JA 516-517.

This conclusion is erroneous because Ms. Abeles  had to assert her religious discrimination claim against MWAA in a timely Equal Employment Opportunity Commission ("EEOC") proceeding in order to be able to sue under Title VII of the Civil Rights Act. The EEOC proceeding concluded on February 7, 2015.  No complaint under Title VII of the Civil Rights Act alleging that religious discrimination had been committed by Ms. Abeles' employers could be instituted until Ms. Abeles had exhausted the EEOC process and had received a "right to sue" letter from the EEOC.

Under these circumstances Virginia's statute of limitations was "tolled" for the duration of the EEOC proceeding under the general tolling provision of

37

Virginia Code § 8.01-229(E)(1) (2006). The EEOC proceeding initiated by Ms. Abeles was, under Virginia's tolling statute, an "action commenced within the prescribed limitation period." *Riva v. Vowell*, 52 Va. Cir. 488 (2000). Its pendency tolled the running of the usual limitations period. The Virginia Supreme Court has said that Section 8.01-229(E)(1) is "highly remedial and should be liberally construed in furtherance of [its] purposes." *Woodin v. Commonwealth Utilities, Inc.*, 209 Va. 72, 74, 161 S.E.2d 669, 670 (1968).

The EEOC proceeding could have produced a conciliation and settlement that would have mooted Ms. Abeles' claim that she was the victim of religious discrimination. Congress mandated an EEOC process in order to encourage out-of-court settlement of Title VII claims through the EEOC. Had Ms. Abeles brought a Section 1983 claim in federal court while the issue was pending before the EEOC, it would have been dismissed as premature. She cannot now be barred on limitations grounds for asserting the Section 1983 claim at the same time that she filed a timely claim against MWAA under Title VII of the Civil Rights Act.

**B. <u>MWAA Is Liable Under Section 1983 Because It Gave Supervisors Discretion To Engage in Religious Discrimination.</u>**

MWAA asserted in the District Court that its liability under Section 1983 is the same as the liability of a municipality. JA 26-29. A municipality is liable for decisions made by its "policymaking officials." *Connick v. Thompson*, 563 U.S.

51, 60 (2011); *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691 (1978); *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 402 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1893 (2015); *Greensboro Professional Fire Fighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 295, 296 (4th Cir. 1995). In fact, Ms. Abeles' suspension was approved by a "policymaking official" – MWAA Vice President and Chief Financial Officer Andrew Rountree. JA 114.

Mr. Rountree, Vice President of Finance and Chief Financial Officer of MWAA, approved Ms. Abeles' suspension for having observed religious holidays after he knew that Ms. Abeles had provided plentiful notice to her superiors and followed the same course that she had followed for 26 years. He was the "final policymaking authority" of MWAA on this matter. His high-level ratification of the action recommended by MWAA's Human Resources Department renders MWAA liable under Section 1983 for failure to make a reasonable accommodation and for indifference to the protected right of Ms. Abeles to observe her religion. *Riddick v. School Board of City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000).

The precedents of this Court establish that a municipality is liable under Section 1983 not only for policies that affirmatively violate civil rights but also for policies that grant such broad discretion to lower-level supervisors that they may freely violate the civil rights of those whom they supervise – *i.e.*, "omissions on the part of policymaking officials that manifest deliberate indifference to the rights of

39

citizens." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727 (4th Cir. 1999),

quoting from *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999). See also *City of*

*Canton v. Harris*, 489 U.S. 378, 388-389 (1989).

By approving the suspension recommended by its Human Resources

personnel and by Ms. Abeles' immediate supervisors, MWAA demonstrated that

its policy towards discrimination based on religious observance was a policy of

"indifference." Under the direction of Robin Wade, Labor Relations Manager at

the time, and Juan Ramos, the Human Resources "labor relations specialist,"

respondents Hodge and  O'Hara imposed a drastic penalty on Ms. Abeles because

she was absent on Passover after she had provided ample notice that she would be

observing her religious holiday. A municipality would be held liable under Section

1983 if its policy makers permitted supervisory personnel to violate one's civil

rights in this manner. MWAA is subject to similar liability.

## V.

### THE RELIGIOUS FREEDOM RESTORATION ACT ("RFRA") APPLIES TO RELIGIOUS DISCRIMINATION BY MWAA

The District Judge accepted MWAA's claim that the Religious Freedom

Restoration Act ("RFRA") does not apply to MWAA. JA 146-148; 232-233.  This

argument ignores the language of RFRA and the obvious Congressional purpose in

enacting that law and in amending Section 2000bb-2(1) after the Supreme Court's

decision in *City of Boerne v. Flores*, 521 U.S. 507 (1997). The Supreme Court held

in its *City of Boerne* decision that RFRA could not constitutionally apply to the States because RFRA was "a considerable congressional intrusion into the States' traditional prerogatives and general authority to regulate for the health and welfare of their citizens." 521 U.S. at 534. In 2000, Congress amended RFRA to conform to the *City of Boerne* ruling by eliminating the law's application to "a State, or a subdivision of a State." Pub. L. 106-274 (2000).

RFRA continued to apply, however, to the federal government and to all entities and individuals covered by the exceedingly broad language of Section 2000bb-2(1). See *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006). That subsection defines "government" as including "a branch, department, agency, instrumentality, and ***official (or other person acting under color of law)*** of the United States, or of a covered entity." (Emphasis added.) The broad language covering anyone who acts "under color of law" must be understood in light of the Supreme Court's observation in *Edmonson v. Leesville Concrete Company, Inc.*, 500 U.S. 614, 620 (1991), that "[a]lthough the conduct of private parties lies beyond the Constitution's scope in most instances, governmental authority may dominate an activity to such an extent that its participants must be deemed to act with the authority of the government and, as a result, be subject to constitutional constraints."

41

MWAA is plainly not a private entity. Congress defined it in Section 49106(a)(1) of Title 49 as "a public body corporate and politic." MWAA was assigned authority over the two airports in the Washington, D.C., area by the Metropolitan Washington Airports Act of 1986, Pub. L. 99-500. It is governed by a 17-member Board of Directors appointed by the President of the United States, the Governors of Virginia and Maryland, and the Mayor of the District of Columbia. Any action taken by MWAA is not, therefore, "private conduct." Compare *Philips v. Pitt County Memorial Hospital*, 572 F.3d 176 (4th Cir. 2009). RFRA applies after the *City of Boerne* decision to public entities where there is no "intrusion into the States' traditional prerogatives and general authority to regulate for the health and welfare of their citizens." MWAA is therefore covered by RFRA.

No reported decision has exempted MWAA from RFRA. *Corr v. Metropolitan Washington Airports Authority*, 702 F.3d 1334, 1337 (Fed. Cir. 2012), held that the MWAA could not be deemed to be "the United States" for purposes of the Little Tucker Act, 28 U.S.C. § 1346(a)(2), that gives District Courts jurisdiction over a "claim against the United States." The Federal Circuit's opinion discussed whether MWAA was an "instrumentality" of the United States. That discussion construed a jurisdictional statute and not the broad remedial language of the Religious Freedom Restoration Act.

42

The broad remedial policy of RFRA and its language bring within the law's scope discriminatory conduct by any "person acting under color of law." Following the Supreme Court's *City of Boerne* decision Congress amended RFRA to withdraw "a State, or a subdivision of a State" from RFRA's reach. It surely did not thereby remove a "public body corporate and politic" over which Congress had exercised its legislative authority in enacting the Metropolitan Washington Airports Act of 1986, Pub. L. 99-59.  MWAA – the archetype of a quasi-governmental body – is surely subject to RFRA.[5]

## VI.

### SUMMARY JUDGMENT ON THE FOURTH CLAIM WAS ERRONEOUS BECAUSE MWAA IS SUBJECT TO THE VIRGINIA RELIGIOUS FREEDOM ACT

On the one hand MWAA contended in the District Court that it is not an agency or instrumentality of the federal government subject to RFRA and, at the same time, it argued that MWAA is not subject to the Virginia Religious Freedom

---

[5] *San Jose Construction Group, Inc. v. Metropolitan Washington Airports Authority*, 415 F. Supp. 2d 643 (E.D. Va. 2006), concerned federal jurisdiction pursuant to the "arising under" language of 28 U.S.C. § 1331 over routine state-law contract disputes involving the MWAA. In determining whether there was "federal-question jurisdiction," the District Court in the *San Jose Construction Group* case observed what is undisputed – *i.e.*, that "MWAA is not a federal entity" and that it is "a creation of state law, established by a joint compact." 415 F. Supp. 2d at 646. The claims in the *San Jose Construction Group* case implicated no "federal interest." Hence the Court determined that they were not within federal-question jurisdiction.

43

Act ("VRFA") because it is not an instrumentality of state government. By accepting this two-pronged argument (JA 517-519), the District Judge effectively empowered MWAA to thumb its nose at federal and state anti-discrimination laws and engage in conduct that would be patently unlawful if committed by any other governmental body.

This Court said in *Washington-Dulles Transportation, Limited v. Metropolitan Washington Airports Authority*, 263 F.3d 371, 373 (4th Cir. 2001), that Virginia courts have original jurisdiction over actions against the MWAA and, quoting Virginia law, that the "courts shall in all cases apply the law of the Commonwealth of Virginia." It is undisputed that the MWAA was originally created by an act of the Virginia General Assembly. That factor, standing alone, may be sufficient to qualify MWAA as a "governmental entity" under Virginia's RFRA. It would be an unacceptable anomaly to exempt MWAA from the Virginia Religious Freedom Act on the ground that it is not "a branch, department, agency or instrumentality of state government" (JA 149) – when (a) its directors are appointed by elected government officials (including the Governor of Virginia), (b) the functions it serves are substantially governmental, and (c) it owes its very existence to an inter-governmental interstate compact and to authority conferred by the United States Congress.

In the District Court MWAA cited *Parkridge 6, LLC v. United States Department of Transportation*, 420 Fed. Appx. 265 (4th Cir. 2011), to support its contention that MWAA is not within the reach of the VRFA. JA 150. In fact, this Court said in its *Parkridge 6* opinion that the MWAA is "***a political subdivision*** constituted to operate and improve the Metropolitan airports." 420 Fed. Appx. at 268 (emphasis added). Moreover, the Court's ruling regarding the applicability of the Virginia Freedom of Information Act to the MWAA related to only one of eight claims made by the plaintiffs in a "fatally flawed" complaint, with the remainder having been correctly dismissed for lack of standing. Finally, whether records must be produced by a governmental agency on the request of a private party under a local Freedom of Information Act has no bearing on whether such an agency is exempt from statutes prohibiting religious discrimination.

## CONCLUSION

For the foregoing reasons, the District Court's order granting summary judgment should be reversed as to all four claims of the Complaint and the case remanded for further proceedings and a trial by jury.

## REQUEST FOR ORAL ARGUMENT

Appellant hereby requests oral argument on this appeal.

Respectfully submitted,

s/Nathan Lewin

Dated: May 31, 2016

Nathan Lewin, Esq.
LEWIN & LEWIN, LLP
888 17th Street, NW, 4th Floor
Washington, DC 20006
(202) 828-1000
nat@lewinlewin.com

*Attorney for Appellant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, I hereby certify that this brief uses a proportionately spaced font and contains 10,762 words exclusive of those portions that are excluded under Rule 32(a)(7)(B)(iii).

By____ /s/ *Nathan Lewin*

Dated:  May 31, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2016, the foregoing **Brief for the Appellant** was served on all counsel of record by CM/ECF.

By  /s/ *Nathan Lewin*